517 P.2d 529

**SEARS ROEBUCK AND CO., a foreign corporation, Appellant,**

v.

**Clarence O. JACKSON, Appellee.**

**No. I CA–CIV 1976.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 18, 1973.

Rehearing Denied Jan. 17, 1974.

Review Denied Feb. 5, 1974.

Evans, Kitchel & Jenckes, P. C. by Newman R. Porter, Phoenix, for appellant.

Giles, Zielinski & Thur by Gordon B. Giles, and Calvin C. Thur, Scottsdale, for appellee.

## OPINION

JACOBSON, Chief Judge.

This appeal from a judgment in favor of the plaintiff and against the defendant in the sum of $40,000 actual damages and $50,000 punitive damages raises issues concerning the admission of evidence, a challenge to a juror, the refusal of instructions and the excessiveness of the jury verdict.

Plaintiff-appellee, Clarence O. Jackson (Jackson) filed an action against defendant-appellant Sears Roebuck and Co. (Sears) initially alleging five separate

causes of action. These consisted of claims that Sears wrongfully interfered with plaintiff's employment; that Sears engaged in blacklisting activities against plaintiff in violation of Article 18, Section 9, Arizona Constitution, A.R.S.; that Sears threatened plaintiff with death or serious bodily harm; that Sears intentionally inflicted upon plaintiff severe emotional distress, and that Sears was negligent in allowing its employees to commit all of these acts. At the close of the plaintiff's case, plaintiff withdrew the negligence claim and the trial court directed a verdict in favor of Sears as to all of the plaintiff's claims except the claim alleging threats of death or bodily injury. As previously stated, the jury returned a verdict upon this claim in plaintiff's favor in the sum of $40,000 actual and $50,000 punitive damages, upon which judgment was entered. Following denial of Sears' motion for new trial, Sears appealed.

Jackson has also cross-appealed contending the trial court improperly excluded certain testimony beneficial to Jackson. The cross-appeal does not, however, ask for affirmative relief, but merely requests that, in the event a new trial is ordered by this court, the trial court be instructed to allow such evidence at the new trial.

While the kernel facts giving rise to the cause of action which was ultimately submitted to the jury for their consideration were hotly contested, there appears to be general agreement as to the collateral facts surrounding this litigation. It appears that beginning in 1953 Sears and Jackson have had a running legal battle arising out of Jackson's purchase of certain power tools from Sears on credit. This litigation and Jackson's ensuing problems received national publicity and were the subject matter of several articles appearing in publications having general nationwide circulation.

As a result of this prior litigation and its termination in Sears' favor, Jackson obviously had rather deep-seated ill feelings toward Sears and was of the opinion that Sears had caused him both severe financial loss and had destroyed his family. Because of these feelings, Jackson in early 1967 began to display in front of a Sears store located in a large shopping center in Phoenix, Arizona, an old Dodge pickup truck. Arranged upon this pickup were various cartoon figures with screws through their bodies and signs stating among other things, "from rags to riches by Sears & Roebuck"; "Sears guarantee cost me $500,000.00, my home and my family"; "Sears and their attorney through fraud stole *all* my property and paid off some of my attorneys"; and "Sears scale of justice is evil" over a drawing of the scales of justice filled with money. Photographs depicting the truck with the sign and paintings were admitted into evidence without objection.

In June or July of 1968, Jackson parked this truck adjacent to the main entrance of Sears, six days a week from approximately 8:00 a.m. to about 9:00 p.m. The truck was still being parked at the store at the time of trial in 1971.

Jackson testified that beginning in mid-November, 1968 and continuing into December 1968, he received eight or nine threats from individuals who Jackson identified as "security men" employed by Sears. As to two of these individuals, Jackson was unable to identify them by name but testified that he ascertained they were employees of Sears by following them into Sears store and inquiring of unidentified Sears sales personnel as to who they were and receiving the information that each individual was a "Sears security man." He also testified that he had seen these two individuals using the Sears employees' entrance and that to his knowledge, only Sears employees used this entrance. Over objection, Jackson was allowed to testify that these two individuals approached him in the parking lot on five or six separate occasions and stated "you're going to get hurt if you don't get this thing [the Dodge pickup truck] off the lot and off the street."

Jackson also testified that Calvin Smith, chief security manager for Sears, came out to the parking lot and stated to him, "Mr. Jackson, I think you are a good, God-fearing man and if you don't get this truck off this lot and off this street, don't you figure on living only day to day" and that Jackson was going to get his "damned head blowed off" and that Smith was "going to put a bomb in that damn truck." No objection was made to Jackson's testimony as to statements made by Smith. Smith denied that he made such statements.

Jackson testified that as a result of these threats he was placed in fear of his life; curtailed his displaying activities at Sears; locked his doors at home; kept the blinds closed; and checked his vehicles before driving them. He further testified that he became nervous, couldn't sleep, got diarrhea, was sick to his stomach and shaky. No other evidence as to compensatory or special damages was introduced.

Sears' counsel, prior to trial, attempted, by a motion in the nature of *in limine*, to restrict the trial to the issue framed by the pleadings and delete any reference to the prior legal problems between Jackson and Sears. This motion was partially successful and a stipulated statement—which summarized the past history of the parties— was read by the court to the jury at the commencement of the suit. However, the court allowed Jackson, over objection and a motion to strike, to explain why he was parking the truck at the store:

> "I was trying to tell the public like how Sears stole over $500,000 worth of my property from me and busted up my home of 42 years over $1,500 worth of tools."

After this testimony was introduced, Sears moved for a mistrial which was denied.

During trial, Jackson was allowed to testify, apparently on the basis of showing Sears motives for wanting to silence him, that he was warning prospective customers of alleged "bait and switch"[1] tactics engaged in by Sears. In this regard the court admitted into evidence, over objection, an unsigned printed document purporting to be an internal memo Sears circulated among its sales personnel instructing them on the methods involved in "bait and switch." The origin of this document was never shown. Jackson testified that he showed this document to "employees" of Sears, but the "employees" were never identified. Jackson was also allowed, over objection, to present evidence through a former vacuum cleaner salesman of Sears that in fact "bait and switch" occurred at Sears, but that this former salesman had never seen the purported Sears memo before.

Jackson was allowed to call June Donovan, a former fired employee of the Sears Security Department, who, over objection testified that the manager of Sears (a principal defense witness and who had previously been cross-examined by Jackson in his case in chief) insisted that the security personnel falsify reports of accidents and events so as not to implicate Sears. It is argued that this evidence demonstrated the bias and prejudice of the Sears manager after he specifically denied the practice on cross examination.

Prior to the presentation of evidence in this matter and in the selection of the jury, a prospective juror indicated that he had read of the Sears-Jackson controversy. On being examined out of the presence of other jurors he stated that he recalled reading of Jackson's problems in national publications, that he felt some sympathy for Mr. Jackson, but felt from the articles he had read that probably Jackson's problems with Sears were partially of Jackson's own making; that he felt that the reporting was probably slanted in Jackson's favor and took that into consideration when reading the accounts; that he could disre-

---

1. "Bait and switch" is the sales tactic of advertising an item at low cost (the bait), but refusing to sell that item and attempting to "switch" the prospective customer to a higher priced item. Sears readily admits this is an improper business practice and denies engaging in it.

gard those accounts and base his decision upon what was presented in court; and that he could be a fair and impartial juror. Sears moved to disqualify this juror for cause which was denied. The juror was subsequently struck by counsel for Sears using a preemptory challenge.

After the matter had been submitted to the jury and after approximately three hours of deliberation, the court received a handwritten question from the jury which asked:

"Can the jury take into consideration past history of plaintiff as to [sic] form of motivation for plaintiff bringing suit?"

After discussion by the court of this inquiry with counsel in chambers, Sears requested the following additional instruction:

"The Court instructs you now that it is not at liberty to answer your specific question, but the Court does instruct that you are to be guided by all instructions previously given you throughout the entire case, including the statement given you by the Court at the commencement of the case."

This additional instruction was denied and the court informed the jury that it could not answer the question.

Sears has listed several grounds which it contends requires a reversal of this matter and the granting of a new trial. Since we agree that a new trial must be granted, we will discuss only those grounds which in our opinion require reversal and those which have a likelihood of resurfacing at a new trial.

■ We turn first to the evidentiary ruling which in our opinion requires reversal of this matter. As previously indicated, Jackson was allowed, over objection, to introduce evidence as to his activities in advising the public as to the alleged practice of Sears engaging in "bait and switch". Not only was Jackson allowed to testify to this unethical practice, he was allowed, again over objection, to introduce into evidence a document which purportedly was a Sears' internal memo urging Sears' sales personnel to engage in this practice. In addition, Jackson was allowed to call a former employee who testified that he had been instructed to engage in this activity. Of course, whether Sears did or did not engage in "bait and switch" tactics is wholly immaterial to any issue in the litigation of Jackson v. Sears. The only materiality this evidence could possibly have was to show a motive on the part of Sears for threatening Jackson. This motive, in turn, requires some foundation that persons employed by Sears in a position to authorize or to make threats against Jackson had knowledge that Jackson was engaged in the activity of publicizing the "bait and switch" tactics. The evidence in this regard was that Jackson carried this document in a brief case; that "on occasion" he would show this to customers of Sears and to Sears "employees", who were never identified, and that a former vacuum cleaner salesman of Sears had knowledge of Jackson's activities in this regard. This is the sum and substance of the evidence dealing with the foundational requirement of knowledge. Nor do the threats themselves supplement this evidence, since they were solely directed toward Jackson's use of the pickup truck.

Jackson argues that knowledge on behalf of Sears' management can be inferred from the fact that the document was shown to Sears' "employees" and that a salesman knew of Jackson's activities but was unaware of the specific document; and that the activity in displaying the document was open. In this regard Jackson relies on the oft-stated rule that a principal is affected by the knowledge of an agent. Restatement of Agency, Second, § 272. However, the Restatement makes two alternative critical prerequisites to this imputation of knowledge. They are: (1) the subject matter of the knowledge must be important in the act which the agent is authorized to perform, or (2) the agent must be under a duty to give his principal the information. *Id.* To determine wheth-

er either of these prerequisites has been satisfied, of necessity the agent must be identified with sufficient certainty to at least ascertain what his duties are. Except as to the vacuum cleaner salesman this was simply not done. As to the salesman, there is no evidence that he was under a duty to give information to his superiors that a disgruntled customer was displaying documents disparaging to Sears. At best it was information casually acquired while entering or leaving his place of employment and was the type of information which, if he was conscientious, he might try to offset with prospective customers, but did not affect his basic duties of selling vacuum cleaners or sewing machines.

Appellees correctly point out that knowledge necessary to prove motive may be proven by circumstantial evidence. 2 Wigmore on Evidence (3rd Ed.) § 389. However, he points to no evidence of knowledge other than that listed, except pure speculation. While the probative value distinction between direct and circumstantial evidence has been eliminated, speculation is not synonymous with circumstantial evidence. Jackson being the offerer of this evidence had the burden of laying a proper factual foundation for its introduction. This he failed to do. There is simply no evidence that any employee of Sears in a position to exercise threats against Jackson knew of Jackson's activities in advertising "bait and switch". This evidence thus became immaterial and its introduction was error. And in any event, the unidentified or unauthenticated memorandum was hearsay, and therefore, should not be admitted at a second trial unless identified as Sears-originated.

Having determined that the "bait and switch" evidence was erroneously introduced, was its introduction reversible error? We believe so. This type of evidence is highly prejudicial in that it casts Sears in the role of being an unethical institution capable of performing unscrupulous acts. Since the liability creating event in this litigation resolved itself into a determination by the jury of who was telling the truth—Jackson who said threats were made or the chief of security who denied that any threats were made—the jury may well have believed that a business which would engage in unethical practices for its economic advantage would also engage in making threats for the same advantage. Thus the scales of credibility may well have been tipped by this evidence. The rule as to the introduction of improper evidence is that if the reviewing court is unable to say that the jury would have reached the same verdict if the improper evidence had been excluded, reversible error has occurred. Harris v. Thompson, 18 Ariz.App. 154, 500 P.2d 1142 (1972); Valley Transp. System v. Reinartz, 67 Ariz. 380, 197 P.2d 269 (1948). In this case we are unable to say whether the jury would have reached the same conclusion had the evidence of "bait and switch" been excluded.

The second area of introduction of evidence which, Sears contends requires reversal deals with threats made by unidentified "security men". As previously indicated, Jackson was allowed to testify as to threats made by two unidentified individuals. Of course, for these statements to be admissible as against Sears, Jackson had the burden of proving that these unidentified individuals were, first of all, employees of Sears. He attempted to meet this burden by (1) testifying as to what other unidentified Sears' employees told him as to their employment, (2) that he had seen these individuals use the employees' entrance to Sears, (3) that he had never seen customers use this entrance (4) that they dressed like Sears security personnel, and (5) they made threats beneficial to Sears.

These extrajudicial statements purportedly made by unidentified persons with no opportunity to cross-examine the declarant in order to prove the truth of the words spoken, are classical examples of hearsay and they are therefore inadmissible unless they qualify as an exception. State v.

Coey, 82 Ariz. 133, 309 P.2d 260 (1957); 5 Wigmore on Evidence (3rd Ed.) §§ 1361, 1362.

■ Jackson contends the statements made by the unidentified Sears employees that the threateners were Sears security men fell within the excited utterance exception to the hearsay rule. *See,* Udall, Arizona Law of Evidence § 174, pg. 362, et seq. The problem with this contention is that there was no evidence at all that the declarant (the unidentified Sears salesperson) was a witness to the excitement creating event (the threats to Jackson) so as to be "speaking under the stress of nervous excitement and shock produced by the act in issue." Keefe v. State, 50 Ariz. 293, 72 P.2d 425 (1937); *see* Warfield v. Shell Oil Company, 106 Ariz. 181, 472 P.2d 50 (1972). Clearly, these statements do not fall within any exception to the hearsay rule and therefore they were improperly admitted by the trial court for the purpose of proving employment. We do not pass at this time on whether the remaining circumstantial evidence was sufficient to allow the jury to determine if the unidentified threateners were Sears' employees. We do point out, however, that this evidence was exceedingly weak and a more thorough foundation might be developed on a retrial of this matter, if this should become an issue.

■ We note in passing that the alleged error in allowing Jackson to testify as to his motives in parking the truck while probably outside the exclusionary rule enumerated by the court, was not reversible error because of evidence containing the same motive as reflected in photographs was admitted without objection; that the testimony of June Donovan as to the bias and prejudice of the Sears manager was properly admitted as tending to show the bias, prejudice and partisan feelings of the manager in favor of Sears. *See,* Udall, Arizona Law of Evidence, § 65, pg. 95; 3A Wigmore on Evidence § 950, pp. 792–793. In addition, the court properly excluded the testimony of John Garcia.

No other issues of error raised on the appeal or cross-appeal are discussed because of the unlikelihood that they will recur on a new trial.

For the reasons herein stated, the judgment of the trial court is reversed and the matter remanded for a new trial.

EUBANK, P. J., Department B, and DONOFRIO, P. J., Department A, concur.

*Note:* Judge LEVI RAY HAIRE having requested that he be relieved from consideration of this matter, Judge FRANCIS J. DONOFRIO was called to sit in his stead and participate in the determination of this matter.