531 P.2d 932

**Ann R. JACKSON, Administratrix of the Estate of Clarence O. Jackson, Deceased, Appellant,**

v.

**AMERICAN CREDIT BUREAU, INC., an Arizona Corporation, and Jack J. Schwartz, Appellees.**

**No. I CA–CIV 2090.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 18, 1975.

Miller, Thur & Preston by Calvin C. Thur, Scottsdale, for appellant.

Kaplan & Nelson by Jerold Kaplan, Phoenix, for appellees.

## OPINION

FROEB, Judge.

In this case, the court is asked to determine when the statute of limitations begins to run against one having a claim for conversion of his personal property by another without the owner's knowledge.

Clarence O. Jackson was involved for many years in litigation with Sears, Roebuck and Co. over lengthy, complicated and burdensome legal issues, all beginning with a purchase he made in 1953 from Sears. It would serve no purpose to review the saga except to say that what began as a relatively small matter burgeoned into the loss of substantial property by Jackson and years of bitter dispute. Part of what took place in the courts was reviewed on appeal. See Jackson v. Sears, Roebuck and Co., 83 Ariz. 20, 315 P.2d 871 (1957); Jackson v. Pacific Investment Company, Inc., 94 Ariz. 416, 385 P.2d 708 (1963); Sears, Roebuck and Co. v. Jackson, 21 Ariz.App. 176, 517 P.2d 529 (1973). Much was not. The dispute attracted nationwide attention and was the subject of newspaper and magazine articles. Jackson kept personal files on the entire conflict, containing letters, receipts, notes, briefs, pleadings, lawyers' records and escrow papers. They were

eight inches thick. These files are the subject of this lawsuit.

In May 1966, Jackson sought a grand jury investigation of various matters in connection with the civil litigation which had then taken place. To support the investigation, he turned over his files to Steve Fotinos, an investigator in the Maricopa County Attorney's Office. This was the last time he saw them. A month later he asked that they be returned but was told they had been misplaced and could not be found. He continued his attempt to retrieve the files in the months that followed. His attorney was informed "not later than August 1966" that they had disappeared and could not be produced. Thereafter, on several occasions between September 1967, and May 1968, Jackson was told by an informant that a person by the name of Jack Schwartz was "the person to look to" and not the Maricopa County Attorney's Office. On May 23, 1968, he filed a suit (which was a forerunner of this one) against Maricopa County, the Maricopa County Attorney and Steve Fotinos for loss of the files (Maricopa County Superior Court Cause No. C–212329). Thereafter, on January 6, 1969, some two years and seven months after he had originally given the files to the County Attorney's Office, and more than two years after they had disappeared from that office, Jackson (appellant) filed this lawsuit against Sears, Roebuck and Co., American Credit Bureau, Inc. and Jack J. Schwartz (appellees). The complaint alleged, in substance, that American Credit Bureau, Inc. (Credit Bureau) and Jack J. Schwartz (Schwartz) were agents and employees of Sears, Roebuck and Co. (Sears) and that the Credit Bureau and Schwartz wrongfully and fraudulently took the files, or caused them to be taken, concealing the fact of their removal from Jackson. Substantial damages, both compensatory and punitive, were sought. In September, 1970, the action against Maricopa County and the Maricopa County Attorney was dismissed with prejudice by stipulation of the parties and order of the court.

In their answers, appellees denied the claim and raised an affirmative defense that the claim was barred by the two-year statute of limitations prescribed by Arizona Revised Statutes, § 12–542. The issue was presented to the trial court by motion for summary judgment on July 17, 1969, and, after a delay allowed by the court for additional discovery, was decided in favor of appellees. This appeal followed. During its pendency, and by stipulation, Sears was dismissed as a party.

There is no dispute that the action is barred if the two-year period of limitation began to run when the files were taken from the County Attorney's Office. Jackson contends, however, that the period did not begin to run until he first became aware that there had occurred an actual "taking" as opposed to merely learning that the files were "missing."

At the outset, we note that the evidence presents a difficult question pertaining to whether the information which Jackson actually had acquired between August, 1966 and May, 1968, amounted to knowledge of an actual "taking." Even if we assume that his information did not rise to that level of understanding, we nevertheless find that the statute of limitations commenced to run from the date of the taking, regardless of what knowledge he in fact possessed.

Arizona Revised Statutes § 12–542 provides that an action for conversion must be "commenced and prosecuted within two years after the cause of action accrues, and not afterward." The cause of action "accrues" at the time of the wrongful taking and not at the time of the discovery by plaintiff of the taking or of the identity of the taker. Stockmen's State Bank v. Merchants' and Stockgrowers' Bank, 22 Ariz. 354, 197 P. 888 (1921); 18 Am.Jur.2d, Conversion, § 76; 51 Am.Jur. 2d, Limitations of Actions, § 124; 54 C.J. S. Limitations of Actions § 168(3); Annot., 136 A.L.R. 658 (1942).

Jackson contends that the running of the statute of limitations was tolled by reason

of the concealment of the taking. He argues that the theft of the files from the County Attorney's Office by its very nature was equivalent to active concealment since he did not know, and could not determine, whether the files had been taken or who had taken them. He argues that he need not show an affirmative or intentional act of concealment since the surreptitious circumstances supply that by implication.

Schwartz and Credit Bureau argue that it is not the concealment of the property but rather concealment of the existence of the cause of action itself which must be shown in order to toll the statute. They say that Jackson has presented nothing which would indicate either an intent or an act of concealment beyond the taking itself.

■■■ There is in the record before us no showing of an affirmative act of concealment. We hold that the fact that the files were allegedly taken while in the hands of a bailee does not add the concealment factor which would be necessary to toll the statute of limitations. There must be some positive act of concealment done to prevent detection. See Tovrea Land and Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966); Acton v. Morrison, 62 Ariz. 139, 155 P.2d 782 (1945); Bryan v. United States, 99 F.2d 549 (10th Cir. 1938); International Union v. Wood, 337 Mich. 8, 59 N.W.2d 60 (1953); Scafidi v. Western Loan and Building Co., 72 Cal. App.2d 550, 165 P.2d 260 (1946). To toll the statute of limitations, the defendant's conduct must be directed to obtaining the delay of which he actively seeks to take advantage by pleading the statute. Zimmerer v. General Electric Co., 126 F.Supp. 690 (D.Conn.1954).

There are instances where the statute of limitations has been tolled in the absence of a positive act of concealment. Tom Reed Gold Mines Co. v. United Eastern Mining Co., 39 Ariz. 533, 8 P.2d 449 (1932) is such a case. There, the defendant wrongfully removed certain ore from the mine of plaintiff without his knowledge. Although the suit was filed more than two years after the theft, the Arizona Supreme Court held that the statute of limitations does not begin to run in an underground trespass case until the plaintiff either knows, or has reasonable cause to know, the facts which constitute the trespass. It said:

"... A number of American states have explicitly provided a special statute of limitations for cases of underground trespass, while Arizona has no such statute. We think, however, the reasoning of the cases which hold generally that the statute does not begin to run when a defendant conceals from a plaintiff the existence of a cause of action is sound when applied to underground trespass cases, both intentional and inadvertent, also, and we therefore hold that no statute of limitations begins to run in any underground trespass case until the plaintiff either knows, or has reasonable cause to know, the facts which constitute the trespass." 39 Ariz. 533, 536–37, 8 P.2d 449, 450.

The court found that the removal of a neighbor's ore is a special circumstance which, even if inadvertent, is a deceit to which a different tolling rule should apply. We observe that in such a case nature has supplied the situation which would allow the removal of ore to occur without detection. In the case at bar these natural factors are not present. The files, as with other items of personal property, fall under the general rule requiring the owner to know of the wrongful taking within two years from the occurrence and to file an action within such time to seek redress. The fact that the owner has placed the property in someone else's hands from whom it is then stolen by a third party does not compel the application of a different rule.

In the face of this holding, there is, of course, the seeming paradox that the statute of limitations benefits the wrongdoer at the expense of the innocent and unsus-

pecting owner of property. Yet, the statutes of limitation are a persistent and necessary part of our judicial system. The legislature is well aware that in enacting statutes of limitation their protection can inure to the benefit of undeserving persons, as is disclosed by the limitation for filing suits for fraud, intentional torts, and, indeed, even prosecution for crimes. They act as a necessary protection against the assertion of unmeritorious claims long after they are capable of being fairly defended.

" . . . The statute of limitations is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation be presumed to have been paid, and is intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof. . . . The underlying purpose of statutes of limitations is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution." 1 Wood on Limitations, 8–9 (4th ed. 1916).

Thus, we hold that the trial court correctly applied the bar of the statute of limitations in dismissing the action since there was no showing of a fraudulent concealment of the cause of action which would have tolled it.

■■ A final point is raised by appellant concerning the order of the trial court sustaining objections to written interrogatories. A period for further discovery was allowed by the court after the filing of the motion for summary judgment by appellees. Extensive interrogatories were served covering all phases of the action. The court sustained objections by appellees to most of them, for the reason they were unreasonably burdensome, oppressive, overly broad and irrelevant when considered in the light of the narrow issue then pending relating to the statute of limitations. The trial court is vested with wide discretion concerning discovery and its decision in such matters will not be disturbed except where there is an abuse of discretion. Cornet Stores v. Superior Court, 108 Ariz. 84, 492 P.2d 1191 (1972). After reviewing the record, we find none here.

Affirmed.

NELSON, P. J., and WREN, J., concur.