66209. FIRST GEORGIA BANK v. WEBSTER.

Shulman, Chief Judge.
Webster, a real estate broker, received a check for $53,638.65 from a client and deposited it in his checking account at First Georgia Bank. Several days later, Webster called the bank and, in response to his inquiry, was informed by a bank representative that the check he had deposited was "good." He then wrote a $47,036.97 check on his account, which First Georgia took from the payee in exchange for a certified check. Thereafter, the $53,638.65 check was returned to First Georgia for insufficient funds. Appellee was informed that his deposit had been returned and that, as a result, his account was overdrawn. When appellee failed to remedy the situation, First Georgia froze the assets of the account in question as well as those of two other accounts appellee had with appellant, and applied the balances to the overdraft. Appellee then filed suit against the bank,

alleging negligence and conversion. Appellant counterclaimed for the loss it sustained due to appellee's overdraft. A jury found for appellee in the main action and the counterclaim and awarded him $3,300 in damages and $6,700 in attorney fees. The bank, asserting that the trial court erroneously denied its motions for directed verdict and for judgment notwithstanding the verdict and seeking a new trial on its counterclaim, now appeals.

1. Appellee's negligence count was based on the representation of the bank employee that the check appellee had deposited was "good." The bank asserts that it is liable only for negligence in the performance of the duties statutorily imposed upon it by the Georgia Uniform Commercial Code—Bank Deposits and Collections (OCGA § 11-4-101 et seq. (Code Ann. § 109A-4—101 et seq.)) and that passage of the UCC did away with actions such as appellee's which are premised upon principles of common law negligence. Therefore, appellant concludes, its motions for directed verdict and for judgment n.o.v. on appellee's negligence claim should have been granted. We must disagree.

"[T]he UCC does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction. [OCGA § 11-1-103 (Code Ann. § 109A-1—103)] provides that general principles of law remain applicable unless otherwise preempted by the Code . . . As a general rule, [this means] that the UCC does not displace the common law of tort as it affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code. [Cits.]" New Jersey Bank, N.A. v. Bradford Sec. Oper., Inc., 690 F2d 339, 345-346 (3rd Cir. 1982). Thus, where the Code provides a comprehensive remedy for parties to a transaction, a common law action would be barred. See *Brannon v. First Nat. Bank of Atlanta,* 137 Ga. App. 275 (3) (223 SE2d 473). While the UCC provides a remedy for the negligent violation of the duties it imposes, it does not provide relief from common law negligence such as is alleged to have occurred in the present case. Therefore, appellee was entitled to bring a common law negligence action against the bank.

Contrary to appellant's assertion, *Brannon* does not hold that a party's obligation to another in a UCC-covered transaction is statutorily limited. Nor is *C & S Nat. Bank v. Levitz Furniture &c.,* 147 Ga. App. 295 (248 SE2d 556), supportive of appellant's position. There, we held that the defendant bank should have been granted summary judgment on a misrepresentation claim because there had been no misrepresentation. The court's observation that the plaintiff could have protected itself from the loss it sustained by seeking check certification is not a statement that common law negligence actions

have been extinguished by the adoption of the UCC. See, e.g., Sabin Meyer Regional Sales Corp. v. Citizens Bank, 502 FSupp. 557, 561 (N. D. Ga. 1980). We conclude that the UCC does not contain an exclusive compilation of a bank's duties, but that some common law duties must also be exercised by the institution with ordinary care. Thus, appellee was entitled to bring a negligence action against the bank, and the trial court's denials of appellant's motions for directed verdict and for judgment n.o.v. on the negligence count were correct.

2. When the $53,638.65 check which appellee had deposited in his First Georgia account was returned to that bank for insufficient funds, the bank revoked the $53,638.65 provisional credit it had extended to appellee when he had made the deposit. Because appellee had made use of a portion of the provisional credit by writing checks against that amount, his account became overdrawn upon the revocation of the credit. In an attempt to mitigate its losses, the bank froze the account in question as well as two other accounts appellee maintained with appellant. The frozen funds were subsequently released to appellee pursuant to a temporary restraining order. In his lawsuit, appellee alleged that the negligence of the bank had created the situation and, therefore, the freezing of his funds constituted conversion of his property. The jury awarded appellee $300 on this claim.

" 'Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. [Cits.]' " *Wilcox v. Citizens Banking Co.,* 31 Ga. App. 202 (2) (120 SE 433). Under OCGA § 11-4-212 (Code Ann. § 109A-4—212), the bank had the right to revoke the credit it had extended appellee when it was unable to collect the check upon which it had extended the provisional credit. See *GMAC v. Bank of Carroll County,* 138 Ga. App. 654 (226 SE2d 815). The fact that appellee had used a portion of the credit extended did not affect the bank's right to charge back the credit. OCGA § 11-4-212 (4)(a) (Code Ann. § 109A-4—212). Even though the bank was negligent and incurred liability therefore (see Division 1), its negligence does not result in a forfeiture of its right of charge back. OCGA § 11-4-212 (4)(b) (Code Ann. § 109A-4—212); Regal Tour, Inc. v. European Am. Bank, 438 NYS2d 947 (N.Y. City Civ. Ct. 1981). Thus, appellant's negligence cannot serve as the basis for appellee's conversion count, and the trial court erred in submitting the issue of conversion to the jury. Therefore, the damages awarded to appellant must be reduced by $300, the amount awarded on the conversion claim. Appellant is thus entitled to a total award of $9,700.

3. By means of a counterclaim, appellant sought to recover the loss it sustained when appellee's deposit was returned for insufficient

funds after appellant had issued appellee provisional credit of which appellee had taken advantage. Appellant based its counterclaim on its right to charge back the account of its customer (OCGA § 11-4-212) (Code Ann. § 109A-4—212)) and the warranty provisions of the UCC. OCGA § 11-3-414 (Code Ann. § 109A-3—414) and 11-4-207 (Code Ann. § 109A-4—207). In response to the counterclaim, the appellee asserted the defense of estoppel which supplements the UCC. See OCGA § 11-1-103 (Code Ann. § 109A-1—103).

Since there was evidence from which the trier of fact could conclude that appellee reasonably relied, to his detriment, on the bank's representation that his deposited check was "good," the elements of estoppel were present and prevented the bank from obtaining a refund of the amount credited to appellee's account. See First Nat. Bank of Denver v. Ulibarri, 557 P2d 1221, 1223 (Colo. App. 1976). Appellant's theory of recovery based on appellee's endorsement of the $53,638.65 check must also be precluded by the estoppel defense. Id.; Burke v. First Peoples Bank of N.J., 412 A2d 1089 (N.J. Super. 1980).

Since this court could not have sustained a judgment for appellant on its counterclaim, the denial of appellant's motion for new trial on its counterclaim was not error.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Birdsong, J., concur.*

DECIDED SEPTEMBER 8, 1983 —
REHEARING DENIED OCTOBER 6, 1983 — 

*Herbert D. Shellhouse,* for appellant.
*Richard P. Decker,* for appellee.