823 P.2d 1326

**Mary Janae BERTHOT, Plaintiff/Appellant,**

v.

**SECURITY PACIFIC BANK OF ARIZONA, an Arizona corporation, f/k/a the Arizona Bank, Defendant/Appellee.**

**No. 1 CA–CV 90–043.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 5, 1991.

Review Denied Feb. 19, 1992.

Jennings, Strouss & Salmon by Maurice Portley, J. Matthew Powell and Kelly J. Barr, Phoenix, for defendant/appellee.

Diana Weinert–Landrith, P.C. by Diana Weinert–Landrith, Scottsdale, for plaintiff/appellant.

## OPINION

SHELLEY, Judge.

Plaintiff/Appellant Mary Janae Berthot (Berthot) appeals from the trial court's judgment in favor of Defendant/Appellee Security Pacific Bank of Arizona (the Bank) wherein the court held that A.R.S. § 47–3419 (U.C.C. § 3–419) has displaced the common law negligence claim in the circumstances presented in this case and that the statute of limitations on Berthot's conversion claim had run. We hold that a common law negligence claim may not be brought when the cause of action falls under A.R.S. § 47–3419. Therefore, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURE BELOW

In January, 1987, Berthot appeared on a criminal charge, and, pursuant to Rule 11.1, Arizona Rules of Criminal Procedure, the trial court found that Berthot was not competent to stand trial in the criminal proceedings. The court committed Berthot to the supervision of the Correctional Health Services in the Maricopa County Jail. The court subsequently permitted Berthot's criminal defense attorney to withdraw.

Berthot had advanced her attorney $6,165 in fees. In February, 1987, the attorney refunded the fees to Berthot by checks written on his account with the Bank in the amounts of $4,150 and $2,015. On or about March 1, 1987, Berthot's father allegedly cashed the two checks at a branch office of the Bank. Berthot maintains that she did not endorse the checks, that her endorsements were forged and that the $6,165 was wrongfully paid to her father.

On March 23, 1987, the trial court found that Berthot was competent to stand trial on the criminal charges. On April 15, 1987, the court released Berthot from custody "with the understanding that [Berthot] has been accepted for placement in a residential treatment facility and ... shall reside at that facility." Berthot left the treatment facility in October or November of 1987.

On August 30, 1989, Berthot filed a complaint in which she alleged that the Bank negligently and carelessly cashed the two checks that were payable to Berthot based upon a forged endorsement and wrongfully paid the proceeds of the checks to someone other than Berthot. She also alleged that the action arose out of contract between the Bank and Berthot and that she thus was entitled to recover her attorney's fees

and costs incurred in the action pursuant to A.R.S. § 12–341.01.

The Bank filed a motion to dismiss, or alternatively, motion for summary judgment. The Bank requested the trial court "to dismiss the complaint since it fails to state a claim upon which relief can be granted." The Bank first contended that if it wrongfully paid the proceeds of Berthot's checks to a third party based on forged endorsements, its liability was based on conversion pursuant to A.R.S. § 47–3419, not common law negligence. Second, the Bank argued that Berthot's statutory conversion claim was barred by either the one-year statute of limitations for statutory claims pursuant to A.R.S. § 12–541 or the two-year limitation period for common law conversion claims pursuant to A.R.S. § 12–542.

Berthot responded that the motion was not a motion to dismiss because it required the court to consider extrinsic facts regarding when Berthot became competent. She argued that it was actually a motion for summary judgment and that it did not comply with Rule 56, Arizona Rules of Civil Procedure, because the Bank did not include a statement of facts and the documents attached to the motions were not admissible. In its judgment, the trial court stated, among other things, "[I]t is ordered granting defendant's motion to dismiss or alternatively granting defendant's motion for summary judgment; ..." The motion to dismiss was based solely on the pleadings. The court found as a matter of law that the Uniform Commercial Code (U.C.C.) provisions on conversion displaced the common law negligence claim. Berthot contended that pursuant to A.R.S. §§ 1–201 and 47–1103, the adoption of the U.C.C. in

Arizona did not displace any common law cause of action.

The trial court found that the U.C.C. had displaced the common law negligence claim and that the statute of limitations had run. The court awarded the Bank $3,477.50 in attorney's fees and $77.50 in costs. Berthot appealed from the judgment granting the Bank's motions and awarding the Bank its fees and costs. Since we find that the trial court did not err in granting the motion to dismiss, it is not necessary to discuss the issue raised with respect to the court's order granting the alternative motion for summary judgment on the statute of limitations issue.

## II. DISCUSSION

Berthot contends that the trial court erred in ruling that A.R.S. § 47–3419[1] (U.C.C. § 3–419) has displaced the common law negligence claim. This is a question of first impression in Arizona.

On appeal, Berthot argues that, unlike other states, Arizona has not taken the position that U.C.C. § 3–419 displaces any common law remedies a person might have. She contends that in Arizona, statutory remedies are to be merely cumulative to common law remedies unless the statutory remedy explicitly provides that it is to be exclusive.

Berthot asserts that A.R.S. §§ 1–201 and 47–1103 (U.C.C. § 1–103) require that statutory remedies be merely cumulative to common law remedies unless the statutory remedy expressly provides that it shall be exclusive. We disagree. A.R.S. § 1–201 reads:

The common law only so far as it is consistent with and adapted to the natural and physical conditions of this state

---

1. A.R.S. § 47–3419 provides in relevant part:

    A. An instrument is converted when:

      ....

      3. It is paid on a forged indorsement.

    B. In an action against a drawee under subsection A of this section the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection A of this section the measure of liability is presumed to be the face amount of the instrument.

    C. Subject to the provisions of this title concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

and the necessities of the people thereof, and not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, or established customs of the people of this state, is adopted and shall be the rule of decision in all courts of this state.

Based on this section, if the common law is inconsistent with the statutory laws of this state, the common law does not apply. A.R.S. § 47–1103 (U.C.C. § 1–103) provides:

Unless displayed [sic displaced] by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Thus, when a provision of the Arizona U.C.C. displaces the common law on that issue, the common law no longer applies. When the common law is displaced by a statute, it is also inconsistent with the laws of this state. Accordingly, Berthot is incorrect in her assertion that the action for conversion specified in U.C.C. § 3–419 does not displace her action against the Bank for common law negligence.

The Bank argues that the U.C.C. remedy and cause of action for conversion found in U.C.C. § 3–419 displaces common law theories of recovery based on the same activity. We agree. To support this contention, the Bank primarily relies on *Equitable Life Assurance Society of the United States v. Okey*, 812 F.2d 906 (4th Cir.1987), in which the court held that the common law negligence cause of action has been displaced by the Code conversion claim in § 3–419.

In *Okey*, the defendant bank paid a third party over a forged endorsement on checks written to the plaintiff. The court interpreted the U.C.C. provisions adopted in South Carolina that are identical to those codified at A.R.S. §§ 47–1103 and –3419. The court stated:

Under § 36–3–419 of the South Carolina Commercial Code, an action for conversion lies when an instrument is paid on a forged indorsement. An unautho-rized indorsement receives the same treatment as a forgery. Anderson, *Uniform Commercial Code* § 3–419.4 (3d ed. 1981). Although styled a 'conversion,' an action under § 36–3–419 effectively subsumes both conversion and negligence claims based on payment over a forged or unauthorized indorsement in that § 36–3–419(3) encompasses the element of due care that is a key issue under a negligence theory. Section 36–3–419(3) provides that

a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

The 'reasonable commercial standards' that limit a collecting or depositary bank's liability under § 36–3–419(3) has been interpreted to be the same 'due care' that provides the standard of care in a negligence action. Anderson, *supra* § 3–419.35 (the Code language in § 3–419(3) is identified with the common law concept of negligence). The allocation of the burden of proving due care under § 3–419(3), however, differs from the allocation of that burden in a negligence action and to that extent conflicts with the common law. Section 36–3–419(3) makes reasonable conduct an affirmative defense to be proved by the defendant collecting or depositary bank. *National Bank of Georgia v. Refrigerated Transport Co.*, 147 Ga.App. 240, 248 S.E.2d 496, 499 (1978) (quoting *Berkheimers, Inc. v. Citizens Valley Bank*, 270 Or. 807, 529 P.2d 903 (1984)). In a common law action for negligence, on the other hand, the plaintiff has the burden of establishing a lack of due care as one of the essential elements of his claim.

In deciding whether the common law action for negligence is displaced by the § 36–3–419 conversion claim, the first authority to consider is § 36–1–103, which

sets the general standard for displacement of the common law by the Code:

Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

Our task is to determine whether § 36-3-419 is a 'particular provision' that displaces the common law. *We believe that the coverage of § 36-3-419 and its allocation of the burden of proof of the element of due care in a way that differs from that in common law negligence demonstrate an intended displacement of the negligence cause of action.*

We note first the overlapping nature of the two theories. An action under § 36-3-419(1)(c) lies when (1) an instrument belonging to plaintiff (2) is paid on an indorsement made without authority and when the collecting bank fails to prove its due care in ascertaining the authority. The negligence that Equitable claims in this case is First National's lack of due care in paying over an unauthorized indorsement without taking reasonable steps to ascertain whether Okey was authorized. *Thus, both negligence and conversion require a consideration whether there was payment over an unauthorized indorsement and evaluation of the reasonableness of the defendant's actions. This duplication suggests that the Code cause of action comprehensively covers the field of legal theories available when a check is paid over an unauthorized indorsement.* [Citations omitted.]

. . . .

The overlapping nature of the claims combined with the conflicting burdens for proving the critical element of due care, further argues for displacement. Requiring a plaintiff to prove due care in effect exacts from him a greater burden than the Code contemplates, for the Code imposes an absolute liability against a bank that commits the act of paying over an unauthorized indorsement unless the bank can prove its own due care. When the U.C.C. sets up particular standards of care or limitations on liability, the common law is annulled to the extent it modifies these standards or changes these limitations. *See Childs v. Federal Reserve Board,* 719 F.2d 812, 814–15 (5th Cir.1983).

. . . .

*Finally, we note in support of our conclusion that the common law negligence and code conversion claims for payment on unauthorized indorsements are in basic conflict, that contributory negligence remains a defense to the former, see, e.g., Williams v. Kinney,* 267 S.C. 163, 226 S.E.2d 555, 557 (1976), *but is not available as a discrete defense to the latter.* The code conversion provision is said by the official comments to S.C. Code § 36-3-419 to be intended as a codification of common law conversion. In common law conversion, contributory negligence was no defense. *See* W. Prosser, *Law of Torts* § 65, at 426 (1971). *Code conversion under § 36-3-419 thus imposes absolute liability unless the defendant can prove good faith and due care; the claimant's lack of care is thus irrelevant. Cf.* S.C. Code § 36-3-406 (drawee, payor, or holder in due course may assert claimant's negligence as defense only when defendant has acted with due care and in good faith). *On the other hand, in common law negligence, a claimant's lack of due care defeats her claim even where the unauthorized payor has acted without due care—i.e., negligently.*

812 F.2d 906, 908–10 (4th Cir.1987) (emphasis added).

The inconsistent verdicts reached by the jury in the *Okey* case, *i.e.*, the jury found the bank was negligent but also found that the bank was not liable for conversion, further convinced the *Okey* court that the U.C.C. conversion action displaced the common law negligence action.

■ Arizona's pertinent U.C.C.'s are identical to those adopted by South Carolina. Our Code imposes an absolute liability against a bank that pays money on a check based on a forged endorsement unless the bank can prove its own due care. On the other hand, for an action based on common law negligence, the plaintiff bears the burden of proving negligence on the part of a bank. In addition, the Code specifies the measure of damages and the defenses available in a conversion action. We agree with the reasoning set forth in *Okey*.

Other courts have considered whether § 3–419 displaces common law causes of action and have concluded that it does not. In *Hechter v. New York Life Ins. Co.*, 46 N.Y.2d 34, 412 N.Y.S.2d 812, 385 N.E.2d 551 (1978), the court interpreted Texas' § 1–103 (U.C.C. § 1–103) to mean that the Code provision must explicitly limit remedies in order to displace a common law cause of action and held that the plaintiff was entitled to bring a contract action against a bank for collecting an instrument over a forged endorsement because such an action was not explicitly abolished by § 3–419. Similarly, the court in *Peerless Ins. Co. v. Texas Commerce Bank–New Braunfels, N.A.*, 791 F.2d 1177 (5th Cir. 1986), held that under Texas law, the common law action for money had and received was not displaced by § 3–419, noting that it could discern no meaningful conflicts or inconsistencies between a U.C.C. action for conversion and a common law action for money had and received, with the exception of additional defenses provided by the Code that could be accommodated in the common law action.

In *First Georgia Bank v. Webster*, 168 Ga.App. 307, 308 S.E.2d 579 (1983), the court held that passage of the U.C.C. did not bar a customer's common law negligence action against his bank based on the representation by a bank employee that the check deposited by the customer was good. The court in *Commercial Credit Corp. v. University Nat'l Bank of Ft. Collins*, 590 F.2d 849 (10th Cir.1979), interpreting Colorado U.C.C. law, held that § 3–419 did not displace the applicability of common law rules regarding a conversion action.

Although these cases held that Code provisions did not displace common law actions, we believe they are all distinguishable from the circumstances presented in *Okey* and the circumstances before us in this appeal. As pointed out by the *Okey* court, the *Peerless* and *Hechter* courts reformed the action for money had and received to accommodate the U.C.C. affirmative defenses of good faith and reasonableness. However, this accommodation cannot be accomplished with a common law negligence claim for conversion. In a common law negligence claim for conversion, a bank does not have the burden of showing due care. The opposing party has the burden of proof with regard to lack of due care on the part of the bank. Thus, there is a direct conflict between the common law and the U.C.C. with regard to the burden of proof. Furthermore, U.C.C. § 3–419 provides that an instrument is converted when it is paid on a forged endorsement. It also specifies the measure of damages and defenses available in such an action. If a negligence action were reformed to fit the due care proof burden of § 3–419, "the negligence action would have no independent significance apart from the Code." *Okey*, 812 F.2d at 910.

Furthermore, in *Webster*, the negligence alleged did not involve the bank's payment of a check with a forged endorsement. Instead, it was based on a representation made by a bank employee. Thus, the negligence alleged in *Webster* did not fit within the cause of action provided for in § 3–419. The court in *Commercial Credit* merely held that a conversion action brought pursuant to § 3–419 was subject to the general principles of law relating to the conversion of property.

In *S.H. Kress & Co. v. Sup. Ct. of Maricopa Co.*, 66 Ariz. 67, 73, 182 P.2d 931, 935 (1947), our supreme court stated, "Common law may be changed by statute though it must be done expressly *or by necessary implication*." [Emphasis added.] We opine that U.C.C. § 3–419 changes the common law by necessary implication.

■ Berthot does not contend that her action could be construed as one for con-

**324**

version. At all times in the pleadings and in the arguments filed in the trial court, Berthot asserted that her claim was one for negligence and contract. The complaint alleges negligence. The word "conversion" is not found in the complaint. We hold that the common law negligence action was displaced and subsumed by A.R.S. § 47–3419, which provides for an action of conversion against a bank who cashes a check with a forged or unauthorized signature. Accordingly, we affirm the trial court's grant of the Bank's motion to dismiss on this ground.

Berthot asserts that her action arises out of contract. We disagree. The complaint's only allegation in this respect is that "This action arises out of a contract between the bank and the plaintiff." No facts are set forth in the complaint upon which this conclusion is based. There is no allegation that either Berthot or her father had an account with the Bank. "To bring an action for the breach of [a] contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975). Berthot did not allege that she was a customer of the Bank. *See Hennesy Equip. Sales Co. v. Valley Nat'l Bank*, 25 Ariz. App. 285, 287, 543 P.2d 123, 125 (1975) (relationship between bank and its customers is contractual in nature). Berthot only alleges that the Bank cashed the two checks based on forged endorsements and that she was damaged as a result thereof. She did not allege that she had any personal relationship whatsoever with the Bank. She failed to state a factual basis for relief on a contract theory.

Finally, Berthot argues that the trial court erred in awarding the Bank its attorney's fees because the court did not state that a contract did not exist. However, the Bank's motion to dismiss asked the court to dismiss the contract claim because Berthot had not alleged that she was a depositor of the Bank and as a third-party she could not sue the Bank and claim that there was a contract between them. Although the trial court did not specifically rule on this portion of the motion to dismiss, by granting the motion, the court impliedly found that there was no contract between the parties.

The trial court awarded the Bank its fees pursuant to A.R.S. § 12–341.01. A party is entitled to an award of its attorney's fees under § 12–341.01 if the plaintiff is not entitled to recover on the contract on which the action is based, or if the court finds that the contract on which the action is based does not exist. *Colberg v. Rellinger*, 160 Ariz. 42, 51, 770 P.2d 346, 355 (App.1988); *Lacer v. Navajo County*, 141 Ariz. 392, 394, 687 P.2d 400, 402 (App. 1984); *Shirley v. Hartford Accident and Indemnity Co.*, 125 Ariz. 70, 71, 607 P.2d 389, 390 (App.1979). Accordingly, we do not believe the trial court abused its discretion in awarding attorney's fees to the Bank.

The Bank has requested an award of attorney's fees on appeal. In our discretion, we deny this request.

The judgment of the trial court is affirmed in all respects.

CLABORNE, P.J., and GRANT, J., concur.