74 F.3d 1246
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTEGRATED RESOURCES EQUITY CORPORATION, a Delaware
corporation, Plaintiff-Appellant,
v.
FOUNDERS BANK OF ARIZONA, a state banking association,
Defendant-Appellee.
 No. 94-15383.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 15, 1995.
Decided Jan. 17, 1996.
 
 Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Integrated Resources Equity Corporation ("IREC") appeals the district court's order granting Founder's motion for judgment on the pleadings in this diversity case. Relying on Berthot v. Security Pacific Bank of Arizona, 170 Ariz. 318, 823 P.2d 1326 (Ariz.App.1991), the court held that IREC's action necessarily alleged a claim for conversion and therefore could proceed only under A.R.S. Sec. 47-3419, rather than under a common law negligence theory. The court also concluded that Arizona courts would not apply the discovery rule to conversion claims under section 47-3419, and that IREC's claim was therefore time-barred. We have jurisdiction under 28 U.S.C. Sec. 1291,[1] and we reverse on both issues.
 
 
 3
 * Judgment on the pleadings is appropriate only where the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir.1989), cert. denied, 493 U.S. 1079 (1990); Fed.R.Civ.P. 12(c). All allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party. Id. We review the district court's rulings in light of these standards.[2]
 
 II
 
 4
 IREC first appeals the district court's ruling that its complaint may proceed only under section 47-3419, rather than under common law negligence. The court's conclusion was based on Berthot, in which the court held that "a common law negligence claim may not be brought when the cause of action falls under A.R.S. Sec. 47-3419." Berthot, 170 Ariz. at 319, 823 P.2d at 1327. Because the district court concluded that IREC's complaint necessarily alleged that Founders had accepted and paid checks with forged endorsements, the court held that the entire cause of action fell under section 47-3419.
 
 
 5
 We agree that Berthot prohibits a plaintiff from bringing a common law negligence action which seeks recovery for the types of conduct described in section 47-3419. However, we find nothing in Berthot which suggests that a plaintiff may not pursue both a section 47-3419 claim for conversion and also a common law negligence action for separate conduct not described in section 47-3419.
 
 
 6
 In Berthot, the plaintiff alleged that her father had cashed two checks at a bank branch office by forging her signature. She sued the bank for negligence, alleging that it "negligently and carelessly cashed the two checks ... based upon a forged endorsement...." Id. The bank moved to dismiss for failure to state a claim, arguing that section 47-3419 had displaced common law negligence causes of action "based on the same activity." Id., 170 Ariz. at 321, 823 P.2d at 1329. The court agreed and granted the bank's motion. In doing so, the court relied heavily on the reasoning in Equitable Life Assurance Society of the United States v. Okey, 812 F.2d 906 (4th Cir.1987), in which the Fourth Circuit held that South Carolina's version of U.C.C. Sec. 3-419 (a provision similar to A.R.S. Sec. 47-3419) had "effectively subsume[d] both conversion and negligence claims based on payment over a forged or unauthorized indorsement...." Id. at 908.
 
 
 7
 In light of Berthot and Okey, it is clear that to the extent that IREC seeks recovery "based on payment over a forged ... indorsement," it may proceed only under section 47-3419. However, we do not believe that the reasoning in either Berthot or Okey precludes IREC from proceeding both for conversion under section 47-3419 and for common law negligence for conduct not specified in that statute.
 
 
 8
 First, the holdings in both Berthot and Okey were quite limited. For example, Berthot held merely that section 47-3419 precluded "common law negligence claim[s] for conversion," Berthot, 170 Ariz. at 323, 823 P.2d at 1331 (emphasis added), while Okey merely held that section 3-419 precluded common law claims "based on payment over a forged or unauthorized indorsement." Okey, 812 F.2d at 908 (emphasis added).[3] Second, the conduct alleged in each case fell squarely and exclusively within the purview of U.C.C. Sec. 3-419; in neither opinion is there any indication that the complaint also alleged, as IREC has done here, conduct other than payment on forged instruments.
 
 
 9
 Third, our conclusion that Berthot does not preclude a plaintiff from bringing both a conversion action and a common law negligence action based on other conduct is also supported by the manner in which Berthot distinguished First Georgia Bank v. Webster, 168 Ga.App. 307, 308 S.E.2d 579 (1983), a case in which the court found that Georgia's version of U.C.C. Sec. 3-419 does not preclude common law negligence actions. Berthot distinguished Webster by noting that in Webster, "the negligence alleged did not involve the bank's payment of a check with a forged endorsement. Instead, it was based on a representation made by a bank employee. Thus, the negligence alleged in Webster did not fit within the cause of action provided for in Sec. 3-419." Berthot, 170 Ariz. at 323, 823 P.2d at 1331.[4]
 
 
 10
 Fourth and finally, we note that the Arizona Supreme Court has held that under Art. 18, Sec. 6 of Arizona's Constitution,[5] the right to bring a common law negligence action is a "fundamental" one which may not be abrogated. See Barrio v. San Manuel Div.Hosp. for Magma Copper Co., 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984) (citing Kenyon v. Hammer, 142 Ariz. 69, 87-88, 688 P.2d 961, 979-80 (Ariz.1984) (Hays, J., concurring)). In light of this fact, we are particularly reluctant to affirm an order granting judgment on the pleadings which effectively precludes IREC from even introducing evidence in support of its negligence claim.
 
 
 11
 For these reasons, we conclude that Berthot does not preclude IREC from seeking recovery both under section 47-3419 and under a common law negligence theory for conduct not necessarily falling within the purview of that statute. We must therefore determine whether IREC's complaint necessarily alleges conduct falling exclusively within the purview of section 47-3419, or whether IREC's allegations also allege conduct which may not fall under that statute.
 
 A.R.S. Sec. 47-3419 provided that:
 A. An instrument is converted when:
 
 12
 ....
 
 
 13
 3. It is paid on a forged indorsement.
 
 
 14
 ....
 
 
 15
 C. Subject to the provisions of this title concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.
 
 
 16
 A.R.S. Sec. 47-3419 (repealed 1993) (emphasis added).[6]
 
 
 17
 The district court held that "in order to have opened and maintained an account in IREC's name, Founders necessarily must have accepted instruments made payable to IREC. Dunlap's endorsement of those instruments was a forgery within the meaning of the former section 47-3419.... [Therefore, IREC's] claim clearly lies within the ambit of section 47-3419."
 
 
 18
 We agree with the district court that IREC's complaint almost certainly alleges conduct falling under the purview of section 47-3419. For example, the complaint alleges that Founders "breached its duty by ... allowing Dunlap to ... deposit checks therein and withdraw funds therefrom that were the property of IREC...." Complaint p 17. In light of Berthot, any such claim must necessarily be brought under section 47-3419.
 
 
 19
 However, IREC's complaint also seeks recovery for conduct which does not necessarily include payment on instruments with forged indorsements or "dealing with instruments or proceeds" on behalf of one not the true owner. For example, paragraph 11 of the complaint alleges that "Founders Bank allowed Dunlap to open the Account without verifying whether Dunlap was authorized to open the Account." Because IREC argues that it can prove that Dunlap opened the account with "an instrument validly payable to him or with a debit charge against another account he controlled," this allegation may not implicate section 47-3419. As such, IREC must be given the opportunity to introduce evidence on the issue, as well as on the other allegations in the complaint which do not necessarily implicate section 47-3419.
 
 
 20
 In sum, we conclude that IREC's complaint alleges conduct which does not necessarily fall within the purview of section 47-3419. If IREC can prove that Founders engaged in conduct which breached a duty at common law but that also was independent of conduct covered by section 47-3419, it may pursue recovery for that other conduct under any available theory, including common law negligence. Whether or not Founders engaged in such conduct is a material issue of fact which remains to be determined, and the district court therefore erred in granting judgment on the pleadings to Founders.
 
 III
 
 21
 IREC also appeals the district court's conclusion that Arizona courts would not apply the discovery rule to toll the statute of limitations for claims sounding in conversion.[7] Because we conclude that the weight of authority suggests that Arizona courts would apply the discovery rule to such claims, we reverse on this issue as well.
 
 
 22
 Arizona courts have sent highly conflicting signals on this issue over the years. In the first relevant decision, Stockmen's State Bank v. Merchants' & Stockgrowers' Bank, 22 Ariz. 354, 197 P. 888 (1921), the Arizona Supreme Court held that the discovery rule does not apply to toll the running of the statute of limitations for conversion actions. The court held that such actions accrued at the time of the conversion, and "the fact that [the] appellee had no notice of the conversion did not prevent the running of the statute." Id., 22 Ariz. at 364, 197 P. at 892 (citations omitted).
 
 
 23
 More than fifty years after Stockmen's State Bank was decided, the Arizona Courts of Appeals addressed the same issue in two cases and reached contradictory results. First, the court in Walker v. Walker, 18 Ariz.App. 113, 500 P.2d 898 (1972) held that a conversion action accrued under A.R.S. Sec. 12-542 on the date the appellant "knew or by the exercise of reasonable diligence should have known" of the facts underlying the claim. Id., 18 Ariz.App. at 114-15, 500 P.2d at 899-900.[8] The court thus effectively applied the discovery rule to conversion claims. Second, in Jackson v. American Credit Bureau, Inc., 23 Ariz.App. 199, 531 P.2d 932 (Ariz.App.1975), the case on which the district court in the instant case relied, the court held that the discovery rule does not apply to conversion claims. Following Stockmen's State Bank, the Jackson court held that an action "accrues" within the meaning of section 12-542 at the time of the wrongful taking, not at the time of the plaintiff's discovery of the taking. Id., 23 Ariz.App. at 201, 531 P.2d at 934. The Jackson court reached this conclusion without citing or discussing Walker.
 
 
 24
 Because Stockmen's State Bank has never been explicitly overruled, and because Jackson was handed down three years after Walker, in the absence of additional authority from the Arizona Supreme Court we would clearly be required to follow Stockmen's State Bank and Jackson rather than Walker. However, subsequent Arizona Supreme Court decisions suggest to us that that court would now follow a different direction.
 
 
 25
 The first such decision is Kenyon v. Hammer, 142 Ariz. 69, 688 P.2d 961 (1984) (en banc). In this case, the plaintiff sued for wrongful death and bodily injury. She alleged that after the birth of her first child, a nurse failed to properly record the Rh factor of her blood. Because of that error, the plaintiff did not receive a RhoGAM shot which was necessary to ensure that during future pregnancies her body's antibodies would not injure her unborn children. As a result of the failure to administer the shot, the woman's second child, born more than five years later, was stillborn. By the time the plaintiff became aware of the nurse's earlier failure, the statute of limitations had already run. Nonetheless, the mother filed suit, arguing that even though the statute had run, Art. 18, Sec. 6 of the Arizona Constitution mandated that the courts apply the discovery rule to toll the statute of limitations.
 
 
 26
 The Arizona Supreme Court agreed with the plaintiff. In doing so, the court had cause to discuss the applicability of the discovery rule in Arizona generally. The court stated that "a survey of Arizona tort law indicates that the discovery rule has been adopted in a great variety of situations. In claims which might qualify as malpractice cases (cases in which defendant breached some duty owed plaintiff by virtue of a special relationship) the discovery rule has been recognized...." Id., 142 Ariz. at 77 n. 6, 688 P.2d at 969 n. 6. In support, the court cited Walker, noting that the case stood for the proposition that "in an action by [a] ward against [his] guardian for conversion, [the] statute begins to run from [the] time [the] ward knew, or should have known, of [the] wrongful act...." Id.[9]
 
 
 27
 The court also went on to state more broadly that "[i]n most cases the discovery rule has been applied as a matter of judicial holding under the provisions of A.R.S. Sec. 12-542, the general statute applying to tort actions, which requires the action to be filed within two years after it 'accrues.' The discovery rule is simply a judicial construction of the word 'accrues.' " Id.[10]
 
 
 28
 Further support that Arizona courts would apply the discovery rule to claims arising under section 47-3419 is offered in Justice Hays' concurring opinion in Kenyon. In that opinion, Justice Hays stated that "the right to bring an action in Arizona is, under our constitution, a fundamental right.... A statute of limitations or repose which abrogates an action for damages even before the action arises or can reasonably be discovered is unconstitutional." Kenyon, 142 Ariz. at 87-88, 688 P.2d at 979-80 (Hays, J., concurring) (emphasis added). Importantly, the majority opinion expressed agreement with this view: "The concurring opinion takes the position that the guarantee implicit in Article 18, Sec. 6 is so substantial a right that abolition of the discovery rule offends the constitutional guarantee. The author does not disagree with this view." Id., 142 Ariz. at 78 n. 8, 688 P.2d at 970 n. 8 (emphasis added).
 
 
 29
 In light of this language, it seems apparent that the Arizona Supreme Court would require that the discovery rule be applied to all cases governed by Art. 18, Sec. 6 of the Arizona Constitution. We must therefore determine whether that provision applies to conversion claims brought under A.R.S. Sec. 47-3419.
 
 
 30
 We conclude that the provision does so apply. In Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 9, 17, 730 P.2d 186, 194 (1986) (en banc), cert. denied, 481 U.S. 1029 (1987) the Supreme Court clarified that Art. 18, Sec. 6 "was intended to take the right to seek justice out of executive and legislative control, preserving the ability to invoke judicial remedies for those wrongs traditionally recognized at common law." Id., 152 Ariz. at 17, 730 P.2d at 194 (emphasis added). Conversion was a wrong traditionally recognized at common law in Arizona. See, e.g., Stockmen's State Bank, 22 Ariz. 354, 197 P. 888 (1921); Berthot v. Security Pacific Bank of Arizona, 823 P.2d 1326 (Ariz.App.1991). In addition, as previously noted, Berthot held that A.R.S. Sec. 47-3419 codified and displaced those common law conversion claims. Because the protection extended by Art. 18, Sec. 6 clearly would have extended to common law conversion claims, we conclude that it also extends to the statutory causes of action which have displaced those claims. As such, Justice Hays' concurrence in Kenyon strongly suggests that we should apply the discovery rule here.
 
 
 31
 As a final matter, we note that we also find support for our conclusion in the Supreme Court's recent decision in Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America, 182 Ariz. 586, 898 P.2d 964 (1995) (en banc). In that case, the court addressed the issue of whether the discovery rule may be applied to contract, as well as in tort, cases. In holding that the rule may be applied in contract cases, the court noted that:
 
 
 32
 In our view, the important inquiry in applying the discovery rule is whether the plaintiff's injury is difficult for plaintiff to detect, not whether the action sounds in contract or tort. Because Gust's injury meets this condition, we believe the trial court's application of the discovery rule was appropriate. The breach involved a private transaction between Prudential's predecessor and a third party. The conduct was difficult for Gust to detect because Gust was not a party to it. The leasing agent was in a position of superior knowledge and had full opportunity to know that its conduct constituted a breach of the lessor's contractual duty to Gust. These are the circumstances under which application of the discovery rule is most warranted.
 
 
 33
 Id. at 968 (emphasis added). In light of this language, our decision on whether the discovery rule applies apparently must turn in large measure on whether the injury or conduct alleged by IREC was "difficult to detect."
 
 
 34
 Because this case arises on a judgment on the pleadings, we are required to accept all of IREC's factual allegations as true. Therefore, we must conclude that Gust mandates application of the discovery rule in this case. For example, IREC has alleged that Founders' decision to allow Dunlap to open an account in IREC's name was difficult for IREC to detect because, in essence, IREC "was not a party to it." In addition, IREC has essentially alleged that Founders "was in a position of superior knowledge and had full opportunity to know that its conduct constituted a breach of [its] duty to [IREC]." In sum, because the Gust court applied the discovery rule in circumstances arguably similar to those alleged in IREC's complaint, we conclude that that rule should be applied here as well.[11]
 
 
 35
 Because the discovery rule applies to IREC's conversion claims, a material issue of fact exists as to when IREC knew or reasonably should have known of the facts underlying its claims. We therefore reverse and remand the case for further proceedings.
 
 REVERSED and REMANDED.[12]
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Founders argues that this court lacks jurisdiction because the district court's judgment was not final as to certain unserved defendants named in the complaint. This argument is without merit, because this court has held that "[i]f an action is dismissed as to all of the defendants who have been served and only unserved defendants remain, the district court's order may be considered final under [28 U.S.C. Sec. 1291] for the purpose of perfecting an appeal." Patchick v. Kensington Pub. Corp., 743 F.2d 675, 677 (9th Cir.1984) (per curiam)
 
 
 [2]
 We also review the district court's interpretation of state law de novo. National Union Fire Ins. Co. v. Showa Shipping Co., Ltd., 47 F.3d 316, 322 (9th Cir.1995)
 
 
 [3]
 See also Flavor-Inn, Inc. v. NCNB Nat'l Bank of South Carolina, 309 S.C. 508, 511, 424 S.E.2d 534, 536 (Ct.App.1992) (noting that Okey stands for the proposition that Sec. 3-419 of the U.C.C. "displaces the common law action for the negligent acceptance for deposit of a check with an unauthorized indorsement") (emphasis added)
 
 
 [4]
 The Webster court's analysis is also instructive. That case stated that:
 Appellee's negligence count was based on the representation of the bank employee that the check appellee had deposited was "good." The bank asserts that it is liable only for negligence in the performance of the duties statutorily imposed upon it by the Georgia [UCC] and that passage of the UCC did away with actions such as appellee's which are premised upon principles of common law negligence.... We must disagree. The UCC does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction.... While the UCC provides a remedy for the negligent violation of the duties it imposes, it does not provide relief from common law negligence such as is alleged to have occurred in the present case.
 Webster, 168 Ga.App. at 308, 308 S.E.2d at 580-81 (citation, internal quotations omitted) (emphasis added). The court thus held that "the UCC does not contain an exclusive compilation of a bank's duties, but that some common law duties must also be exercised by the institution with ordinary care. Thus, appellee was entitled to bring a negligence action against the bank...." Id., 168 Ga.App. at 309, 308 S.E.2d at 581 (emphasis added).
 
 
 [5]
 This provision provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. Art. 18, Sec. 6
 
 
 [6]
 Although this statute has since been repealed, the parties have stipulated that this is the relevant statute applicable to this case
 
 
 [7]
 We note, as did the district court, that the appropriate statute of limitations may be A.R.S. Sec. 12-541(3) (applying to statutory actions), rather than A.R.S. Sec. 12-542. However, because each of the parties argues that Sec. 12-542 applies, and because the district court decided the case on this basis, we also do not reach the issue
 A.R.S. Sec. 12-542 states in relevant part that "there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions: ... [f]or detaining the personal property of another and for converting such property to one's own use."
 
 
 [8]
 The Walker court did not cite nor discuss Stockmen's State Bank
 
 
 [9]
 In citing Walker in this manner, it is possible that the court simply meant to indicate that the discovery rule would apply in conversion cases only when those cases involved breaches of fiduciary duties, such as Walker. However, based on additional language in the opinion, we conclude that the court probably did not intend to create such a limit
 
 
 [10]
 See also Davis v. Dow Chemical Corp., 819 F.2d 231, 233 (9th Cir.1987) (citing Kenyon for the proposition that "Arizona courts have adopted the discovery rule for ... tort actions"); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir.1987) (citing Davis and Kenyon and applying the discovery rule to a conversion action under Arizona law)
 
 
 [11]
 Our conclusion is buttressed by the fact that Gust, after noting that Stockmen's State Bank outlined the traditional rule (that the statute of limitation begins to run when the acts giving rise to the claim occur, regardless of whether the plaintiff is aware of those facts), noted that the modern development of the discovery rule was designed to "mitigate the harshness" of the traditional rule. Gust, 898 P.2d at 966
 
 
 [12]
 This court cannot determine from the record on appeal whether complete diversity exists between the parties. IREC's complaint alleges that it is a Delaware corporation licensed to do business in Arizona, where all the defendants apparently reside; however, the complaint does not specify IREC's principal place of business (even though IREC's appellate brief states that its principal place of business is New York). For purposes of diversity jurisdiction, a corporation is a citizen of both (1) any state in which it has been incorporated and (2) the state where it has its principal place of business. 28 U.S.C. Sec. 1332(c)(1). Upon remand, the district court shall direct IREC to amend its pleadings to specify its state of incorporation and principal place of business. If there is a factual dispute over IREC's principal place of business, the district court should make factual findings to resolve the issue