3 P.3d 1113

**SAN TAN IRRIGATION DISTRICT, a political subdivision of the State of Arizona, Plaintiff–Appellee,**

v.

**WELLS FARGO BANK, Defendant–Appellant.**

No. 1 CA–CV 99–0091.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 25, 2000.

**194**

Streich Lang P.A. by Dawn R. Gabel, Phoenix, for Defendant–Appellant.

Martinez & Curtis, P.C. by William P. Sullivan Larry K. Udall, Phoenix, for Plaintiff–Appellee.

## OPINION

SULT, Judge.

¶ 1 Wells Fargo Bank appeals from the grant of summary judgment to San Tan Irrigation District on San Tan's claim of conversion under Article 3 of the Uniform Commercial Code, Arizona Revised Statutes Annotated ("A.R.S.") section 47–3420 (1997). Because the trial court erred in failing to consider the applicable statutory defenses asserted by Wells Fargo, we reverse the grant of summary judgment and remand for further proceedings.

## BACKGROUND

¶ 2 San Tan's conversion claim was based on Wells Fargo accepting for deposit checks that, while payable to San Tan, had a forged endorsement placed thereon by San Tan's bookkeeper, Glenda Miller, who deposited the checks into her personal account at Wells Fargo. According to San Tan, Wells Fargo's acceptance of the forged deposits created *prima facie* liability to San Tan for statutory conversion. And because Wells Fargo did not exercise due care in the transactions, it became absolutely liable to San Tan in the amount of the checks accepted for deposit. The lack of due care, San Tan argued, lay in Wells Fargo's employees' violations of several bank policies designed to detect forged instruments and their general ineptness in failing to detect what should have been obvious fraud.

¶ 3 According to Wells Fargo, San Tan had entrusted Ms. Miller with the sole responsibility for receiving, posting, and depositing payments made to San Tan by its irrigation customers. Ms. Miller was San Tan's only full-time employee, and the company neither monitored Ms. Miller's activities nor placed any internal controls on her. The only reason the defalcation by Ms. Miller came to

light was because a customer questioned why it had not been credited with a payment it had made, a payment that had been diverted by Ms. Miller.

¶ 4 Based on its version of the facts, Wells Fargo raised the defenses to conversion provided by A.R.S. §§ 47–3405 and 47–3406 (1997). San Tan responded that these defenses did not apply and that *Berthot v. Security Pacific Bank,* 170 Ariz. 318, 823 P.2d 1326 (App.1991), was the controlling precedent. According to San Tan, *Berthot* required a finding that section 47–3420 imposed liability on Wells Fargo unless it could prove that it acted with due care, a defense San Tan asserted was provided by § 47–3420 and the only defense available against a claim for conversion. The trial court apparently accepted San Tan's argument regarding *Berthot* and apparently also found that the evidence precluded any possibility that Wells Fargo could prove it exercised due care in accepting and processing the subject deposits. The trial court therefore granted summary judgment to San Tan, and Wells Fargo timely appealed.

### ISSUE

¶ 5 On appeal, San Tan has changed its position, abandoning its assertion that sections 47–3405 and 47–3406 are not applicable to a conversion claim under section 47–3420, and arguing instead that Wells Fargo cannot utilize those defenses because it cannot meet the good faith requirement imposed by both statutes on a depositary bank. Wells Fargo not only argues that the defenses are available against a conversion claim under section 47–3420 but also adds that on this record, it clearly satisfies the test of good faith. Our focus on appeal thus becomes whether there is a genuine issue of material fact that Wells Fargo exercised "good faith" as that term is used in sections 47–3405 and 47–3406.

### ANALYSIS

¶ 6 Section 47–3420 provides a right of recovery to the payee of an instrument against a depositary or payor bank that pays the instrument over a forged endorsement. *See* A.R.S. § 47–3420 U.C.C. cmt. 1 (1997). The claim is considered to be one for conversion and replaces the previous common law remedy of negligence. *See Berthot,* 170 Ariz. at 324, 823 P.2d at 1332.[1]

¶ 7 A claim under section 47–3420 may be defeated in whole or in part if the payee of the instrument is an employer and the forgery was accomplished by an employee entrusted by the payee with responsibility for the instrument. Alternatively, the action may be defeated or recovery reduced if the forgery was enabled by the negligence of the payee. These scenarios are covered in sections 47–3405 and 47–3406, respectively, and each scenario presents a series of factual questions that must be resolved in order to determine whether and to what extent the payee may recover from the bank.

¶ 8 We now set forth the pertinent portions of each statute. Section 47–3405(B) provides:

> For the purpose of determining the rights and liabilities of a person who, *in good faith,* pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee . . . makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the

---

1. San Tan is correct to abandon its assertion made at the trial court that *Berthot* is the controlling precedent. Not only is there nothing in *Berthot* that precludes a depositary or payor bank from invoking sections 47–3405 or 47–3406 against a conversion claim under section 47–3420, but the "due care" defense discussed in *Berthot* and argued by San Tan to the trial court has not been in the conversion statute for several years. That statute, numbered section 47–3419 at the time *Berthot* was decided, was substantially amended in 1993, *see* 1993 Ariz. Sess. Laws ch. 108, § 6, and the due care defense of section 47–3419(C) was not carried forward into the new statute, section 47–3420. *Berthot's* continuing vitality lies principally in its holding that statutory conversion subsumes and replaces the previous remedy of negligence.

fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(Emphasis added.)

Section 47–3406(A) and (B) provide:

A. A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, *in good faith,* pays the instrument or takes it for value or for collection.

B. Under subsection A, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(Emphasis added.)

¶ 9 The two statutes share the requirement that a depositary bank seeking to defeat a recovery under section 47–3420 must demonstrate that it acted in good faith in paying, or taking for value or collection, a forged instrument. As to what "good faith" means, Wells Fargo relies both on the definition found in section 47–1201 (1997), describing good faith as "honesty in fact in the conduct or transaction concerned," and on *City of Phoenix v. Great Western Bank & Trust,* 148 Ariz. 53, 712 P.2d 966 (App.1985), applying that same definition in the context of the "fictitious payee" statute of Article 3. Wells Fargo argues that because there is absolutely no evidence that it acted dishonestly in regard to the subject transactions, it must be held to have satisfied the good faith requirement.

¶ 10 The problem with Wells Fargo's position is that there is a different definition of good faith applicable to transactions covered by Article 3, the Article that governs the disposition of this case. That definition is found in A.R.S. § 47–3103(A)(4) (1997) and specifies that good faith is composed of "honesty in fact *and the observance of reasonable commercial standards of fair dealing.*" (Emphasis added.) This Article 3 definition was not added until 1993, which is why *City of Phoenix,* decided in 1985, relied on the more limited definition from the U.C.C.'s general definition section, and also why *City of Phoenix* is of no assistance in determining the issue before us.[2]

¶ 11 With respect to the Article 3 definition, it is San Tan's position that while Wells Fargo may have acted honestly, it did not satisfy the second prong of fair dealing. San Tan describes Wells Fargo's actions as completely irresponsible and asserts that, rather than observing reasonable commercial standards of fair dealing, Wells Fargo was careless in accepting the subject checks for deposit in light of the circumstances surrounding the endorsements and the deposit information provided by the bookkeeper. This carelessness, according to San Tan, was so extreme that it equated to a lack of fair dealing, a finding that San Tan asserts is required on this record as a matter of law.

¶ 12 We need not decide whether the evidence supports San Tan's characterization of Wells Fargo's actions because we find San Tan's contention erroneously attempts to infuse negligence concepts into a determination of good faith. The comment to section 47–3103(A)(4) makes it clear that the fair dealing prong of the good faith definition "is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care in conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction." A.R.S. § 47–3103 U.C.C.

2. Wells Fargo was also apparently misled into relying on *City of Phoenix* because the case discussed good faith in the context of a statute that, in 1985, was numbered section 47–3405. However, in 1993 several statutes were renumbered, and the statute at issue in *City of Phoenix,* which is known as the fictitious payee statute, was assigned and now bears the section number 47–3404. *See* 1993 Ariz. Sess. Laws Ch. 108, § 6. Thus, Wells Fargo's reliance on such language from the case as "negligence [of a bank] is irrelevant to a § 47–3405 defense asserted by a depositary bank" is misplaced.

cmt. 4. Consequently, San Tan gains nothing by characterizing Wells Fargo's conduct as careless, because it is the fairness with which a party handles a transaction, not the care with which it does so, that is the proper focus of inquiry. *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–3(c), at 245–46 (4th ed.1995).

¶ 13 Because the trial court accepted San Tan's position that sections 47–3405 and 47–3406 did not apply, that court never reached the question whether there was a triable issue of fact regarding Wells Fargo's good faith. With respect to that inquiry, we note that the two aspects of the good faith definition are subject to differing tests to determine whether a party has acted in good faith. *See Maine Family Federal Credit Union v. Sun Life Assurance Co. of Canada*, 727 A.2d 335, 340, ¶ 17 (Me.1999) (construing the Article 3 definition of good faith in the context of a holder in due course). "Honesty in fact" is tested by a subjective standard, inquiring into the actual state of mind of the party. *Id.* at 340–42, ¶¶ 18–23. "Observance of reasonable commercial standards of fair dealing" requires an objective measurement of the fairness of the party's action in light of prevailing commercial standards. *Id.* at 342–44, ¶¶ 24–36. Both components must be proved in order to establish good faith, and whether that has been done in a particular case presents a question that ordinarily must be resolved by the fact finder.[3]

¶ 14 Notwithstanding that the trial court never addressed the good faith issue, Wells Fargo requests that we resolve the issue in its favor, arguing that the record supports such a ruling. We disagree because we find the record insufficient. While we agree with Wells Fargo that San Tan presented no evidence that Wells Fargo acted other than honestly, this only partially answers the

question. What is missing from the record is any evidence relating to the fairness of Wells Fargo's conduct. That is, there is no evidence of the reasonable commercial standards that provide the frame of reference by which the "fair dealing" aspect of Wells Fargo's conduct can be determined. *See Maine Family Federal Credit Union*, 727 A.2d at 343, ¶ 28. We therefore conclude that a remand to the trial court is required for the parties to develop this issue.

■ ¶ 15 In order to provide guidance to the parties on remand, we briefly comment on the remaining elements of sections 47–3405 and 47–3406. For section 47–3405 to apply, a bank bears the initial burden of proving that an employer entrusted an employee with "responsibility" for the instrument in question. This is a factual inquiry, and subsection (A)(3) of section 47–3405 frames the inquiry, setting forth various criteria from which this determination is made. With respect to this initial step, the negligence of the employer, if any, in enabling the employee's malfeasance is not an issue.

■ ¶ 16 If the bank proves the employer entrusted the employee with responsibility, and also proves that it acted in "good faith," the loss from the transaction is shifted from the bank to the employer. However, the employer can then force the bank to share the loss if it can prove that the bank acted negligently with respect to the transaction and that this negligence substantially contributed to the loss. Both the question of negligence and the question of causation are ordinarily questions of fact, as is the final question under the statute, namely the extent to which the bank's negligence contributed to the loss.

---

3. The Minnesota Court of Appeals recently held that Article 3 good faith as used in the Minnesota counterpart to our section 47–3405 requires a subjective test for both prongs of the definition and is presumed until the contrary is proven. *Halla v. Norwest Bank Minnesota, N.A.*, 601 N.W.2d 449, 452 (Minn.App.1999). We reject this interpretation because it conflicts with the U.C.C.'s framers intention in adding the second prong to the definition. *See* Prefatory Note, U.C.C. Revised Article 3, *in 1990 Handbook of the*

*National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting in its Ninety-ninth Year* 427 (1998) (describing added prong as "objective standard" applicable to performance of all duties under Articles 3 and 4). In addition, we fail to understand how the phrase "reasonable commercial standards of fair dealing" could be measured in any fashion but by an objective standard.

¶ 17 Section 47–3406 has a different triggering mechanism.[4] For this section to apply in a case such as ours, a bank must show that the employer's negligence permitted someone to forge or alter an instrument, resulting in the loss. If the bank can show this, and can also show that it acted in good faith in the transaction, the employer is precluded from asserting the forgery against the bank. However, as with section 47–3405, the employer then has the right to prove the bank was negligent in handling the transaction, and if it can make this showing, the bank must share the loss to the extent its negligence substantially contributed thereto. Each of these steps in section 47–3406 presents a question of fact, ordinarily to be resolved by the fact finder.

## CONCLUSION

¶ 18 We remand this matter for further proceedings consistent with this decision. Because we are reversing the trial court, we must also vacate the award of attorneys' fees to San Tan. However, the trial court may again award fees once the merits of the case have been resolved. *See Swanson v. Safeco Title Ins. Co.*, 186 Ariz. 637, 640, 925 P.2d 1354, 1357 (App.1995) (vacating award of attorneys' fees when reversing grant of summary judgment, pending identification of prevailing party following conclusion of the case on the merits). We also deny Wells Fargo's request for attorneys' fees on appeal, deferring this request to the trial court's discretion pending resolution of the matter on the merits.

CONCURRING: JON W. THOMPSON, Presiding Judge, and WILLIAM F. GARBARINO, Judge.

---

4. Section 47–3406 also has a broader scope than section 47–3405 in that it deals with the negligence of any payee, not just an employer, and extends to forgery or alteration of an instrument by anyone, not just an employee.